Hillsborough-southern judicial district
No. 98-376

## WEST GATE VILLAGE ASSOCIATION

v.

## JOSEPH W. DUBOIS, JR. & a.

## JOSEPH W. DUBOIS, JR. & a.

v.

## WEST GATE VILLAGE ASSOCIATION

October 11, 2000

*Joseph E. Mitchell,* of Merrimack, by brief and orally, for West Gate Village Association.

*Timothy J. Arel,* of Milford, by brief and orally, for Joseph W. Dubois, Jr., and Sabine G. Dubois.

HORTON, J. Joseph W. Dubois, Jr. and Sabine G. Dubois appeal from a Superior Court (*Hampsey,* J.) order denying their motion to dismiss and granting summary judgment in favor of West Gate Village Association. We affirm in part, reverse in part, vacate in part, and remand.

West Gate calls itself a non-profit, homeowners association. The Duboises are homeowners and members of West Gate. West Gate asserts that it has the authority to levy "an annual assessment against its members for the funding of authorized common activities." West Gate is governed by a "Declaration of Covenants." Prior to October 1988, the covenants required a sixty percent quorum. On October 3, 1988, West Gate amended the covenants to lower the quorum requirement to twenty-five percent.

In 1987, West Gate filed an action against the Duboises in the Nashua District Court, seeking collection of the 1986 and 1987 homeowner assessments. In May 1988, the Nashua District Court (*Howorth,* J.) held that a quorum was not present at the 1986 annual meeting, and that it could not determine whether a quorum was present at the 1987 meeting. The court also held that the association could ratify the 1986, and if necessary the 1987, assessment if a quorum was present and approved the ratification at the 1989 meeting.

In October 1989, the Duboises moved for the district court to find West Gate in contempt for, among other things, placing liens on their property for unpaid assessments. In that motion, the Duboises

contended that the sixty percent quorum requirement for levying annual assessments had not been properly amended to twenty-five percent. On February 12, 1990, the district court held a hearing and issued a one-sentence order confirming its prior order and denying the motion for contempt. The Duboises did not make any assessment payments in the years 1990 through 1995. The annual assessments between 1990 and 1995 varied from $175 to $210 per year.

In 1995, the Duboises filed a superior court action in equity against West Gate, seeking a declaratory judgment and injunctive relief from liens that West Gate had placed against the Duboises' property. The Duboises argued that West Gate did not properly amend the covenants so that any action taken under the amended covenants was invalid. West Gate counterclaimed to collect the annual assessments for 1990 through 1995, pleading quantum meruit and unjust enrichment. West Gate also brought a separate civil action to recover the annual assessments for the same six years, based upon the amended covenants. The cases were consolidated on January 16, 1996.

West Gate moved for summary judgment on the Duboises' petition for declaratory judgment and injunctive relief, asserting that the Duboises were barred by the statute of limitations from challenging the 1988 amendment. The superior court indicated that it would treat the motion as a motion to dismiss because the statute of limitations claim is an affirmative defense. The court granted West Gate's motion on May 21, 1996. The court did not rule or comment on West Gate's counterclaim or civil action. The Duboises appealed to this court, and we summarily affirmed the superior court's decision. *Westgate Village Association v. Joseph W. Dubois, Jr. and Sabine G. Dubois; Joseph W. Dubois, Jr. and Sabine G. Dubois v. Westgate Village Association*, No. 96-412 (N.H. November 12, 1997).

Thereafter, West Gate moved for summary judgment on its counterclaim and civil complaint and requested attorney's fees. The Duboises objected, arguing that whether the 1988 amendment reducing the quorum for levying annual assessments was properly enacted remained a fact in dispute between the parties. The Duboises also moved to dismiss West Gate's claims based on res judicata stemming from the prior district court rulings.

The superior court granted West Gate's motion for summary judgment and denied the Duboises' motion to dismiss. The court indicated that the Duboises' defense to West Gate's claims rested "exclusively upon whether the Association properly amended its declaration of covenants," an issue which the court "decline[d] to revisit." The court held that its prior decision regarding the statute

of limitations was "the law of the case." The superior court awarded attorney's fees to West Gate in the amount of $14,190 plus court costs and statutory interest.

On appeal, the Duboises argue that the superior court erred in: (1) denying their motion to dismiss West Gate's claims on the basis of res judicata; (2) not applying a three-year statute of limitations to West Gate's claims; (3) not permitting them to assert as a defense that the covenants were improperly amended; and (4) awarding attorney's fees. We address each argument in turn.

## I. Res Judicata

The Duboises first contend that West Gate's claims are barred by res judicata deriving from the May 1988 district court ruling and, therefore, the superior court erred in denying their motion to dismiss. "Spurred by considerations of judicial economy and a policy of certainty and finality in our legal system, the doctrine of res judicata has been established to avoid repetitive litigation so that at some point litigation over a particular controversy must come to an end." *Hallisey v. DECA Corp.*, 140 N.H. 443, 444, 667 A.2d 343, 344 (1995) (quotations, ellipsis, and brackets omitted). "Under res judicata, a final judgment by a court of competent jurisdiction is conclusive upon the parties in a subsequent litigation involving the same cause of action." *Marston v. U.S. Fidelity & Guaranty Co.*, 135 N.H. 706, 710, 609 A.2d 745, 747 (1992) (emphasis and quotation omitted). "[C]ause of action collectively . . . refer[s] to all theories on which relief could be claimed on the basis of the factual transaction in question." *Eastern Marine Const. Corp. v. First Southern Leasing*, 129 N.H. 270, 275, 525 A.2d 709, 712 (1987). "Thus a crucial question in determining whether to apply res judicata . . . is always whether the action brought in the second suit constitutes a different cause of action than that alleged in the first suit." *Id.* at 274, 525 A.2d at 712. In this case there is no res judicata because the Duboises' and West Gate's superior court suits constituted different causes of action from West Gate's district court suit.

The district court order addressed the assessments for 1986 through 1988. The order dealt with each year on an individual basis. The court concluded that there was no quorum at the 1986 meeting and stated that whether a quorum was present at the 1987 meeting could not be determined. The order also stated that West Gate could ratify the assessments in question at its 1989 meeting. The order did not address any actions by either party that occurred after May 4, 1988.

In their 1989 motion for contempt in the district court, the Duboises alleged that prior to the 1989 annual meeting, West Gate improperly amended the quorum requirement from sixty percent to twenty-five percent. They also alleged that under the new quorum requirement, West Gate submitted the 1986, 1987, and 1988 votes for ratification. The Duboises further alleged that while it was unclear whether a quorum of twenty-five percent was present, it was "clear that the appropriate quorum of [sixty percent] was not present for ratification." The factual basis for these allegations did not exist when the district court rendered its decision, and the Duboises did not have the opportunity to raise them as part of their defense to the cause of action against them. *Cf. Grossman v. Murray*, 141 N.H. 265, 270, 681 A.2d 90, 94 (1996) (events occurring after conclusion of proceedings not basis for res judicata).

■ Therefore, whether the covenants were properly amended in 1988 could not have been part of West Gate's initial cause of action in district court. Furthermore, the record is unclear as to whether these allegations were properly before the district court when it issued its February 1990 order confirming its 1988 order and denying the motion for contempt. Even if we assume that these issues are subject to res judicata resulting from the 1990 order, the court ruled for West Gate on the contempt motion, and res judicata would not assist the Duboises. Therefore, we affirm the decision of the superior court to deny the Duboises' motion to dismiss based on res judicata.

## II. Statute of Limitations

The Duboises next assert that the superior court erred in awarding West Gate assessments for six years rather than three years. The Duboises argue that because the trial court applied the three-year statute of limitations for personal actions, RSA 508:4, I (1997), to their equity claim, it should also have applied it to West Gate's claims. The Duboises support this argument by asserting the law of the case doctrine. West Gate contends that the law of the case does not apply, and, even if RSA 508:4, I, does apply, the amended covenants provide for a six-year period within which to bring a collection action. West Gate does not argue that by placing liens on the Duboises' property its collection action became subject to the twenty-year limitation in RSA 508:2 (1997). Without deciding whether RSA 508:2 would apply under these circumstances, we hold that RSA 508:4, I, limits West Gate's recovery to within three years of filing their claim and counterclaim.

■ RSA 508:4, I, applies to contract actions, *see Black Bear Lodge v. Trillium Corp.*, 136 N.H. 635, 637, 620 A.2d 428, 429 (1993), and states: "Except as otherwise provided by law, all personal actions, except actions for slander or libel, may be brought only within 3 years of the act or omission complained of . . . ." In contract actions, the cause of action arises, and the time limit in RSA 508:4 begins to run, at the time of the breach. *Bronstein v. GZA GeoEnvironmental*, 140 N.H. 253, 255, 665 A.2d 369, 371 (1995). "A breach of contract occurs when there is a failure without legal excuse, to perform any promise which forms the whole or part of a contract." *Id.* (quotation and brackets omitted).

■ Both the original and amended covenants require members to pay their assessments when due. When the Duboises failed to pay their assessments on the date they were due, West Gate's cause of action arose for the collection of the assessment. *See id.* The amended covenants further provide for the placing of a lien upon default. A lien must be recorded within six months of a default, and a suit to enforce a lien must be brought within six years of recording the lien. The Duboises do not raise the issue of whether West Gate filed liens as required by the covenants. This six-year clause provides the basis for West Gate's legal argument that it has contractually extended the three-year statute of limitations.

■ The principal purpose of statutes of limitations is to eliminate stale or fraudulent claims. *Keeton v. Hustler Magazine, Inc.*, 131 N.H. 6, 14, 549 A.2d 1187, 1192 (1988).

> Absent such statutes, a dilatory plaintiff might burden a defendant with suits of which he was not timely informed, and clog court dockets, interfering with the "orderly administration of justice." Statutes of limitations reflect the fact that it becomes more difficult and time-consuming both to defend against and to try claims as evidence disappears and memories fade with the passage of time. Such statutes thus represent the legislature's attempt to achieve a balance among State interests in protecting both . . . courts and defendants generally against stale claims and in insuring a reasonable period during which plaintiffs may seek recovery on otherwise sound causes of action.

*Id.* (citations omitted). We further recognize that statutes of limitations may be waived. *See Yeaton v. Skillings*, 100 N.H. 316, 320, 125 A.2d 923, 926 (1956). West Gate, however, is seeking to circumvent the legislature's declaration of public policy in RSA

508:4, I, by contractually extending the three-year statute of limitations before any cause of action exists. Such an agreement "is unenforceable because a party cannot in advance, make a valid promise that a statute founded in public policy shall be inoperative." *John J. Kassner & Co. v. City of New York*, 389 N.E.2d 99, 103 (N.Y. 1979) (quotation omitted). Therefore, the trial court erred in awarding West Gate assessments for six years instead of three years.

## III. Improper Amendment to the Covenants as a Defense

### A. Statute of Limitations as a Bar

The Duboises contend the trial court erred in determining that its prior ruling based upon the statute of limitations prevented them from asserting that the covenants were improperly amended as a defense to West Gate's claims. West Gate argues that the Duboises should not be able to assert as a defense the same claim that the statute of limitations precluded them from asserting as a separate action. Essentially, West Gate seeks to take advantage of the statute of limitations to prevent the Duboises from asserting a defense that, if successful, could negate part or all of West Gate's claims for unpaid assessments.

We agree with the Duboises that as a general rule the statute of limitations was not intended to deny a defendant the use of a legitimate defense. *Cf. Bayoud v. Nassour*, 688 S.W.2d 198, 199 (Tex. Ct. App. 1985). This is true even if the claims asserted in the defense would be barred by the statute of limitations if brought as a separate cause of action.

> The purpose of such statutes is to keep stale litigation out of the courts. They are aimed at lawsuits, not at the consideration of particular issues in lawsuits. . . . To use the statute of limitations to cut off the consideration of a particular defense in the case is quite foreign to the policy of preventing the commencement of stale litigation. We think it would be incongruous to hold that once a lawsuit is properly before the court, decision must be made without consideration of all the issues in the case and without the benefit of all the applicable law.

*United States v. Western Pac. R.R.*, 352 U.S. 59, 72 (1956). Therefore, the Duboises' defense that the covenants were improperly amended in 1988 is not barred by the statute of limitations.

## B. Law of the Case as a Bar

West Gate further contends that the Duboises should be denied this defense under the doctrine of the law of the case. It argues that because the dismissal of the Duboises' equity action was affirmed on a prior appeal, the Duboises cannot raise as a defense to West Gate's claims issues that were part of their equity action.

In this context, the doctrine of the law of the case "refers to the preclusive effect given to any question once decided on appeal to this court in later stages of the litigation. Such decisions become binding on the parties, and we will not reexamine them in the same case upon a subsequent appeal." *In re Ryan G.*, 142 N.H. 643, 647, 707 A.2d 134, 137 (1998) (quotations, citation, and brackets omitted).

In the prior appeal, the trial court ruled that the Duboises' declaratory judgment action was barred by the three-year statute of limitations in RSA 508:4. We affirmed this ruling by order on November 12, 1997. Our summary affirmance of the trial court's ruling was nothing more than an affirmance of the dismissal of the Duboises' equity action. Because the issue on the prior appeal was the applicability of RSA 508:4 and not whether the covenants were properly amended, the law of the case doctrine does not bar the Duboises from raising the amendment issue as a defense. *See Taylor v. Nutting*, 133 N.H. 451, 456, 578 A.2d 347, 350 (1990). Therefore, we reverse the trial court's decision that the law of the case doctrine bars the Duboises from raising the issue of whether the covenants were properly amended in 1988 as a defense to West Gate's claims, and we remand for further proceedings consistent with this opinion.

## IV. Attorney's Fees

Because of the disposition of this case on appeal, we vacate the award of attorney's fees and remand for further consideration.

We conclude that the parties' remaining arguments are meritless and do not warrant further discussion. *Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed in part; reversed in part;*
*vacated in part; and remanded.*

BROCK, C.J., sat for oral argument but did not take part in the final vote; JOHNSON, J., sat for oral argument but retired prior to the final vote; THAYER, J., sat for oral argument but resigned prior to the final vote; BRODERICK, J., concurred; NADEAU and DALIANIS, JJ., who took part in the final vote by consent of the parties, concurred.